UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
THE CHARTER OAK FIRE INSURANCE COMPANY,  :
:
Plaintiff,   :
: 20 Civ. 2911 (JPC)
-v-   :
: OPINION
NEW YORK MARINE AND GENERAL INSURANCE : AND ORDER
COMPANY,   :
:
Defendant.   :
:
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

This case concerns which of two insurance companies must defend a business in a personal injury action pending in New York state court. The parties have filed cross motions for summary judgment. For the reasons stated below, the Court grants Plaintiff's motion and denies Defendant's motion.

**I. Background**

**A. Factual Background**

Unless otherwise indicated, the following facts are undisputed and are taken from the parties' statements of material facts pursuant to Local Civil Rule 56.1. *See* Dkt. 35-7 ("Def.'s Resp. to Pl.'s 56.1 Stmt."); Dkt. 36-5 ("Pl.'s Resp. to Def.'s 56.1 Stmt.").

In 2016, Acadia Realty Limited Partnership and Acadia West 54th Street, LLC (collectively, "Acadia") owned the premises located at 834 7th Avenue, New York, New York, and had leased the ground floor unit to 834 7th Avenue LLC, doing business as The Stagecoach Tavern ("Stagecoach"). Pl.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 3, 6; Def.'s Resp. to Pl.'s 56.1 Stmt. ¶ 8. One section of the lease discussed Stagecoach's obligations with regard to sidewalks in front of its

premises. Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 8. It stated:

> 22. <u>Sidewalks.</u> If the premises are situated on the ground floor of the Building, the tenant thereof shall further, at the tenant's expense, keep the sidewalks and curb in front of said premises free of any tripping hazards, clear of any violations. Tenant shall be responsible for the maintenance and repair of sidewalks to include patching, replacing damaged sections, if such patching or replacing of damaged sections results from damage caused by Tenant or its employees, agents or customers willful misconduct or negligence, cleaning sidewalk and keeping sidewalk free from ice, snow, trash, debris etc.

*Id.*; *see also* Dkt. 34 ("Charter Oak Motion"), Exh. D at Exh. H ¶ 22.

Plaintiff The Charter Oak Fire Insurance Company ("Charter Oak") issued a commercial general liability policy to Acadia for the July 1, 2016 to July 1, 2017 time period (the "Charter Oak Policy"). Def.'s Resp. to Pl.'s 56.1 Stmt. ¶ 1. The policy provided coverage for bodily injury that occurred during the policy period and was caused by an accident. *Id.* ¶ 2. It also included an "other insurance" provision that explained that coverage under the Charter Oak Policy was excess over any other coverage available to Acadia. *Id.* ¶ 3. This included insurance that was available to Acadia "as an additional insured under any other policy." *Id.* (internal quotation marks omitted).

Defendant New York Marine and General Insurance Company ("NYM") issued a commercial policy to Stagecoach for the July 30, 2016 to July 30, 2017 time period (the "NYM Policy"). *Id.* ¶ 4. Like the Charter Oak Policy, this policy also provided coverage for bodily injury that occurred during the policy period and was caused by an accident. *Id.* ¶ 5. The NYM Policy listed Acadia as an "[a]dditional [i]nsured." *Id.* ¶ 6. It further provided that Acadia's inclusion as an additional insured was "only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule." *Id.*[1] The NYM Policy too included an "other insurance" provision. *Id.* ¶ 7. It stated that the NYM Policy was "primary"

---

[1] The NYM Policy designated the premises leased to Arcadia as "834 7th Avenue, New York, NY 10105," *i.e.*, Stagecoach. Def.'s Resp. to Pl.'s 56.1 Stmt. ¶ 6.

unless certain exceptions applied. *Id.*

Jeffrey Holmes alleges that, on November 25, 2016, he was walking on 7th Avenue when he tripped and fell on a tree well guard located on the sidewalk in front of Stagecoach. Pl.'s Resp. to Def.'s 56.1 Stmt. ¶¶ 1, 2. The tree well guard consisted of a small wrought iron fence around an area of land that normally would contain a tree, but at the time did not. *Id.* ¶ 2; *see also* Charter Oak Motion, Exh. F at 1 (describing the fence as approximately "18 inches to 2 feet high" and surrounding a landscape that "[a] tree had once occupied"). In 2015, Acadia had hired a contractor to install that tree well guard. Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 12. Following his alleged accident, Holmes filed a personal injury action, *Holmes et al. v. The City of New York et al.*, Index No. 155768/2017, in the Supreme Court of the State of New York, County of New York. Def.'s Resp. to Pl.'s 56.1 Stmt. ¶ 11. In that suit, Holmes named Stagecoach, Acadia, and two other defendants that are not relevant here. *Id.*

In his state court action, Holmes alleges that both Stagecoach and Acadia "had a duty to maintain" the location where he allegedly fell "in a reasonably safe and suitable condition and in good repair." *Id.* ¶¶ 12, 13. He further contends that both entities "installed or placed the fence surrounding the tree well." *Id.* ¶ 12; *see also id.* ¶ 13. Further, Holmes argues that Stagecoach and Acadia "caused and created the dangerous, defective, and unsafe condition that led to [his] injury" and that his accident was caused by the "negligence, wrongdoing, carelessness, recklessness, and/or tortious conduct" of both companies. *Id.* ¶¶ 12 (internal quotation marks omitted), 13 (internal quotation marks omitted).

On January 5, 2017, Charter Oak notified NYM of Holmes's claim and demanded NYM defend and indemnify Acadia. *Id.* ¶ 14. On July 13, 2017, NYM advised Charter Oak that it was unable at the time to make a decision as to Charter Oak's tender. *Id.* ¶ 15; Charter Oak Motion,

Exh. G.  The next day, Charter Oak tendered Holmes's state court action to NYM and demanded that NYM defend Acadia as an additional insured under the NYM Policy.  Def.'s Resp. to Pl.'s 56.1 Stmt. ¶ 16.  On August 18, 2017, NYM denied Acadia coverage and stated that it would "neither defend nor indemnify Acadia."  *Id.* ¶ 17; *see also* Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 18; Charter Oak Motion, Exh. I.  Charter Oak has been defending Acadia in Holmes's state action ever since.  Def.'s Resp. to Pl.'s 56.1 Stmt. ¶ 18.

**B.  Procedural History**

On April 8, 2020, Charter Oak initiated this action against NYM.  Dkt. 1 ("Complaint" or "Compl.").  The Complaint seeks declaratory relief and argues that the NYM Policy obligates NYM to "defend and indemnify" Acadia in Holmes's state court action.  *Id.* ¶ 1.  NYM filed an answer on June 17, 2020.  Dkt. 12.  This case was reassigned to the undersigned on September 29, 2020.

On December 21, 2020, NYM filed a motion for summary judgment, a memorandum of law in support of its motion, Dkt. 32-1 ("NYM Motion"), and supporting exhibits and other materials.  *See* Dkt. 32.  NYM seeks a declaration that it has "no obligation to defend or indemnify Acadia."  NYM Motion at 2.  That same day, Charter Oak also filed a motion for partial summary judgment, a memorandum of law in support of its motion, and supporting exhibits and other materials.  *See* Dkts. 33; Charter Oak Motion.  Charter Oak seeks a declaration that NYM "has a duty to defend Acadia."  Charter Oak Motion at 1.  On January 11, 2021, each party filed an opposition to the other's motion, Dkts. 35 ("NYM Opposition"), 36, and on January 19, 2021, both filed reply briefs in support of their respective motions, Dkts. 37 ("NYM Reply"), 39 ("Charter Oak Reply").  In its reply, Charter Oak confirmed that it seeks only partial summary judgment because any question of damages should be decided at a future inquest.  Charter Oak Reply at 1, 8.[2]

---

[2] NYM and Charter Oak each requested oral argument on their summary judgment motions.  Dkts. 38, 40.  The Court concludes that it can resolve both motions without the aid of

## II. Legal Standard

A district court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" and "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (quoting *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001)).

These same standards apply when parties file cross-motions for summary judgment. *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.* (internal citation omitted).

## III. Discussion

Under New York law[3], "the duty of an insurer to defend its insured is 'exceedingly broad'

---

oral argument and thus denies these requests.

[3] Pursuant to New York choice-of-law rules, New York law applies because "[t]he parties' briefs assume that New York law controls." *Response Pers., Inc. v. Hartford Fire Ins. Co.*, 812 F.

5

and far more expansive than the duty to indemnify its insured." *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 94-95 (2d Cir. 2018) (quoting *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (1993)); *accord Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 37 (2010). "[T]he insurer's duty to provide a defense is invoked 'whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be.'" *High Point Design, LLC*, 911 F.3d at 95 (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984)). Thus, "the general rule in determining whether an insurer has a duty to defend is to compare the allegations of the complaint with the operative insurance policy." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004). An insurer must defend even if "facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 427 (2d Cir. 2002) (quoting *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991)). "If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend." *High Point Design, LLC*, 911 F.3d at 95 (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002)).

However, "[a] narrow, but widely recognized exception to the rule allows an insurer to refuse or withdraw a defense if evidence extrinsic to those sources and unrelated to the merits of plaintiff's action[,] plainly take the case outside the policy coverage." *Int'l Bus. Machs. Corp.*, 363 F.3d at 148 (alteration in original) (internal quotation marks omitted). "For this exception to apply, 'the extrinsic evidence relied upon may not overlap with the facts at issue in the underlying case.'"

---

Supp. 2d 309, 314 (S.D.N.Y. 2011); *accord Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).

*Travelers Indem. Co. v. Harleysville Ins. Co. of N.Y.*, No. 18 Civ. 600 (PGG), 2020 WL 1304085, at *4 (S.D.N.Y. Mar. 19, 2020) (quoting *United States Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321, 331 (E.D.N.Y. 2018)); *accord City of New York v. Liberty Mut. Ins. Co.*, No. 15 Civ. 8220 (AJN), 2017 WL 4386363, at *15 (S.D.N.Y. Sept. 28, 2017) ("[I]t is a settled rule [under New York law] that extrinsic evidence can[not] be used to defeat the duty to defend . . . [unless it is] unrelated to the merits of [the underlying] plaintiff's action." (alterations in original) (internal quotation marks omitted)). Thus, "the insurer may deny its insured a defense 'only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy.'" *High Point Design, LLC*, 911 F.3d at 95 (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985)). In other words, unless the Court can "*eliminate the possibility*" that the insured's conduct falls within coverage of the policy, the insurer is not relieved of its duty to defend." *Int'l Bus. Machs. Corp.*, 363 F.3d at 148 (internal quotation marks omitted).

Here, the NYM Policy names Acadia as an additional insured and covers "liability arising out of the ownership, maintenance or use" of the portion of the building leased to Stagecoach. Def.'s Resp. to Pl.'s 56.1 Stmt. ¶ 6. New York courts have broadly interpreted language similar to this. *See Regal Constr. Corp.*, 15 N.Y.3d at 38 (explaining that the New York Court of Appeals has interpreted "the phrase 'arising out of' in an additional insured clause to mean 'originating from, incident to, or having connection with,'" and such a provision thus "requires 'only that there be some causal relationship between the injury and the risk for which coverage is provided'" (quoting *Maroney v. N.Y. Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472 (2005)); *ZKZ Assocs. LP v. CNA Ins. Co.*, 89 N.Y.2d 990, 991 (1997) (holding that a pedestrian's injuries stemming from a fall on the

sidewalk outside a garage "arose out of 'the ownership, maintenance [or] use of' the garage" (alteration in original)).

The parties agree that, in the underlying state court action, Holmes alleges that Stagecoach and Acadia "operated, maintained, managed, controlled, supervised, repaired, inspected, constructed, and designed the location where [he] allegedly fell" and that both entities "had a duty to maintain that location in a reasonably safe and suitable condition and in good repair." Def.'s Resp. to Pl.'s 56.1 Stmt. ¶¶ 12, 13; *see also, e.g.*, Charter Oak Motion, Exh. E ¶¶ 43, 45, 57, 59. Holmes says that Stagecoach and Acadia's "negligence, wrongdoing, carelessness, and/or tortious conduct" with regard to their maintenance of the area where he fell caused his accident. Def.'s Resp. to Pl.'s 56.1 Stmt. ¶¶ 12 (internal quotation marks omitted), 13 (internal quotation marks omitted). Such allegations are "potentially within the language of the insurance policy" at issue, *High Point Design, LLC*, 911 F.3d at 95, because the NYM Policy covers liability "arising out of the ownership, maintenance or use" of the premises, Def.'s Resp. to Pl.'s 56.1 Stmt. ¶ 6. The policy therefore may well cover conduct arising out of a tree well guard that Acadia installed, Stagecoach's and Acadia's maintenance of that tree well guard, and each company's use of the area where the tree well guard was located, *i.e.*, on the sidewalk near the front of the entrance to Stagecoach. Put differently, a comparison of "the allegations of the complaint" and "the operative insurance policy," *Int'l Bus. Machs. Corp.*, 363 F.3d at 148, shows that Holmes's allegations, regardless of their ultimate merit, possibly fall within the scope of the NYM Policy. Thus, NYM has a duty to defend Acadia. *High Point Design, LLC*, 911 F.3d at 95.[4]

---

[4] Charter Oak also contends that NYM must defend because the NYM Policy was Acadia's primary insurance under the language of the policy. Charter Oak Motion at 10-11; *see* Def.'s Resp. to Pl.'s 56.1 Stmt. ¶ 7. NYM does not argue that any enumerated exception to the NYM Policy's primacy applied or that the NYM Policy was somehow not primary. The Court concludes that the plain language of the NYM Policy indicates that it was.

In arguing that it does not have a duty to defend Acadia, NYM relies on evidence extrinsic to the underlying state court complaint in an effort to show that NYM "will never owe a duty to indemnify Acadia" and thus "also owes no duty to defend Acadia." NYM Motion at 6. NYM says that the NYM Policy was not triggered here because its lease with Acadia "did not impose upon Stagecoach an obligation to maintain the tree well guard," *id.* at 7, but rather only discussed keeping the *sidewalk* free of tripping hazards, NYM Opposition at 4. NYM also points to testimony from Todd McGaughey, an Acadia representative, in which McGaughey stated that Stagecoach was not able to perform maintenance on the tree well guard. NYM Motion at 6; *see also* Pl. Resp. to Def.'s 56.1 Stmt. ¶¶ 11, 12.[5] These types of extrinsic evidence go to the merits of the underlying claims, however, and thus cannot be used to avoid the duty to defend. *See Int'l Bus. Machs. Corp.*, 363 F.3d at 148 (explaining that an insurer may only point to extrinsic evidence "unrelated to the merits of the plaintiff's action" in an effort to avoid the duty to defend (internal quotation marks omitted)).

*Travelers Indemnity Co. v. Harleysville Insurance Co. of New York*, 2020 WL 1304085, dealt with a similar issue of extrinsic evidence. There, the underlying action alleged that a fence was partly to blame for a car accident. *Id.* at *4. The defendant insurer pointed to extrinsic evidence to suggest that the fence did not actually cause the accident. *Id.* at *5. But the court held that "[e]xtrinsic evidence of this sort cannot be relied on to defeat a duty to defend claim" because it went "directly to the merits" of the underlying suit. *Id.* So too here. NYM argues that the additional insured provision of the NYM Policy is not triggered because Stagecoach did not have a duty to maintain the tree well guard that allegedly caused Holmes to trip. NYM Motion at 6-7. Such an

---

[5] Charter Oak disputes that McGaughey testified that Stagecoach could not perform maintenance on the tree well guard and contends that McGaughey instead testified that any such work would have to be approved by the City of New York before it could begin. Pl.'s Resp. to Def.'s 56.1 Stmt. ¶ 11. Because the Court concludes that NYM's reliance on this extrinsic evidence is inappropriate in any event, the Court need not resolve this dispute.

argument goes to the underlying merits (*i.e.*, whether Stagecoach or Acadia was responsible for Holmes's alleged injuries) and does not defeat NYM's duty to defend Acadia in the underlying suit. *See Liberty Mut. Ins. Co.*, 2017 WL 4386363, at *15 (concluding that the defendant insurer could not defeat its duty to defend with extrinsic evidence because it relied on issues "relevant to the merits of the underlying actions"); *see also Gemini Ins. Co. v. Titan Constr. Servs., LLC*, No. 17 Civ. 8963 (WHP), 2019 WL 4023719, at *8 (S.D.N.Y. Aug. 27, 2019).

The cases NYM cites in support of its position are inapposite. NYM Motion at 7-8; NYM Opposition at 7, 10; NYM Reply at 4-5, 7-8. For example, NYM relies on *Vucetovic v. Epsom Downs, Inc.*, 10 N.Y.3d 517, 521-22 (2008), for the proposition that a section of New York City's administrative code does not extend duties landlords have for sidewalks to tree well guards. *See, e.g.*, NYM Motion at 7-8. Further, NYM cites a smattering of New York state cases for its proposition that there are only four circumstances when "the nexus between [an] [a]ccident and the leased premises is found and the 'arising out of' language is triggered." NYM Opposition at 7.

Reliance on these cases proves too much. The ultimate question of whether Stagecoach or Acadia may be held liable for Holmes's alleged injuries is no matter here. Instead, Charter Oak need only show that the allegations in Holmes's complaint are "potentially within the language of the insurance policy" in order to trigger NYM's duty to defend Acadia. *High Point Design, LLC*, 911 F.3d at 95. That, it has done. "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Id.* (quoting *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 8-9 (1985)); *accord Cont'l Cas. Co. v. JBS Constr. Mgmt., Inc.*, No. 09 Civ. 6697 (JSR), 2010 WL 2834898, at *3 (S.D.N.Y. July 1, 2010) ("As has long been recognized, [t]he insured's right to representation and the insurer's correlative duty to defend suits . . . are in a sense litigation insurance

expressly provided by the insurance contract no matter how baseless the allegations contained in the complaint may be." (alteration in original) (internal quotations omitted)).

Holmes's allegations are potentially within the language of the additional insured provision of the NYM Policy because Holmes says Stagecoach and Acadia were required to maintain the tree well guard in a safe condition, and they did not. *See* Def.'s Resp. to Pl.'s 56.1 Stmt. ¶¶ 12-13. The Court thus cannot "eliminate the possibility that the insured's conduct falls within the coverage of the policy," *Int'l Bus. Machs. Corp.*, 363 F.3d at 148 (emphasis and internal quotation marks omitted), when the policy here broadly covered liability "arising out of the ownership, maintenance or use" of the premises, Def.'s Resp. to Pl.'s 56.1 Stmt. ¶ 6. Thus, NYM is "not relieved of its duty to defend" Acadia. *Int'l Bus. Machs. Corp.*, 363 F.3d at 148.[6]

### IV. Conclusion

For the reasons stated, the Court grants Charter Oak's motion for partial summary judgment, Dkt. 33, and denies NYM's motion for summary judgment, Dkt. 32. With regard to the issue of damages, both parties agree that an inquest is proper. The Court thus will issue a subsequent order referring this matter to the Honorable Barbara C. Moses for a damages inquest. The Clerk of Court

---

[6] Although the Complaint seeks a declaration with regard to NYM's duty to indemnify, *see* Compl. at 1 ¶ 1, 6 ¶ 5, Charter Oak does not ask the Court for such relief in its summary judgment motion, *see* Charter Oak Motion at 1 (seeking only a declaration that NYM "has a duty to defend Acadia"), 6 (same). "[W]hen the duty to indemnify 'necessarily depend[s] on the resolution of one or more issues to be determined in the [s]tate [a]ction[],' a declaratory judgment on that duty is premature." *Gemini Ins. Co.*, 2019 WL 4023719, at *9 (alterations in original) (quoting *Westport Ins. Corp. v. Hamilton Wharton Grp., Inc.*, No. 10 Civ. 2188 (RMB), 2011 WL 724737, at *4 (S.D.N.Y. 2011)). Holmes's state court action is pending, and Acadia's liability, if any, has yet to be established. The Court therefore dismisses the portion of Charter Oak's claim seeking a declaration that NYM owes Acadia a duty to indemnify, to the extent Charter Oak continues to seek that relief. *See id.*; *accord Brotherhood Mut. Ins. Co. v. Ludwigsen*, No. 16 Civ. 6369 (CS), 2018 WL 4211319, at *17 (S.D.N.Y. Sept. 4, 2018) ("Generally, [c]laims concerning indemnification obligations . . . are not ripe for adjudication until liability has been imposed upon the party to be indemnified." (alterations in original) (internal quotation marks omitted)).

is respectfully directed to terminate the motions pending at Docket Numbers 32, 33, 38, and 40.

    SO ORDERED.

Dated: September 8, 2021
       New York, New York

                                                     JOHN P. CRONAN
                                          United States District Judge